Samuel M. Gold, J.
This is an action for annulment on the ground of alleged invalidity of the marriage by reason of solemnization by a person not authorized to perform the marriage ceremony.
Defendant appeared in the action but did not interpose an answer. The action was tried as an undefended matrimonial action. The court adjourned the trial after hearing the evidence presented by plaintiff so that the testimony of the City Clerk with regard to the matters here involved could be given on the adjourned datp>
*101 The parties and the person performing the ceremony were members of an encounter group. Plaintiff testified that that person’s principal occupation was as guitarist and folk singer. The parties were advised that he also was a minister of Universal Life Church, Inc.
The parties obtained a license from the City Clerk of the City of New York and the marriage ceremony was performed by that person in up-State New York. Had he performed it in the City of New York, the City Clerk would have immediately challenged its validity for lack of registration in his office of that person’s name and address, as required by section 11-b of the Domestic Relations Law.
Section 11 of the Domestic Relations Law provides: “No marriage shall be valid unless solemnized by either:
“ 1. A clergyman or minister of any religion, or by * * *
“ 2. A mayor * * * or the city clerk * * *
“ 3. A justice or judge of a court of record * * * or
“ 4. A written contract of marriage signed by both parties and at least two witnesses, all of whom shall subscribe the same within this state, stating the place of residence of each of the parties and witnesses and the date and place of marriage, and acknowledged before a judge of a court of record of this state by the parties and witnesses * * *
“ 5. [.solemnization in the case where either party is under the age of twenty-one years]
“ 6. [solemnization by a public officer outside his territorial jurisdiction]
‘ ‘ 7. The term ‘ clergyman ’ or ‘ minister ’ when used in this article, shall include those defined in section two of the religious corporations law.”
The Religious Corporations Law, while making provision for the incorporation of churches and recognizing the traditional denominations, also indicates' acceptance of unincorporated churches and of any group joining for religious worship in any form.
Section 2 of the Religious Corporations Law defines an “ unincorporated church” as a “congregation, society, or other assemblage of persons who are accustomed to statedly meet for divine worship or other religious observances, without having been incorporated for that purpose.” It defines the term “ clergyman ” or “ minister ” as including “ a duly authorized pastor, rector, priest, rabbi, and a person having authority from, or in accordance with, the rules and regulations of the governing ecclesiastical body of the denomination or order, if *102 any, to which the church belongs, or otherwise from the church or synagogue to preside over and direct the spiritual affairs of the church or synagogue.”
The constitutional guarantee of freedom of religious worship carries with it the right to have one’s marriage solemnized by a minister of one’s own faith (Matter of O’Neill v. Hubbard, 180 Misc. 214; Matter of Saunders [Hubbard], 37 N. Y. S. 2d 341). Although there was no evidence of authority from any denomination or order to the person acting as rabbi of a small congregation, he was held to have received his authority as “ minister ” from the synagogue to preside over and direct its spiritual affairs and, therefore, to have authority to solemnize a marriage (Matter of Silverstein, 190 Misc. 745). The Attorney-General, construing section 11 of the Domestic Relations Law and finding no provision in any statute of this State requiring that a clergyman or minister of any religion be ordained, has stated: “If, in fact, he is recognized by his church and congregation as a minister of such religious sect, he is authorized to perform the marriage ceremony” (1928 Opns. Atty. Gen. 163,164).
Nevertheless, despite this liberal statutory and decisional law, the person performing this ceremony must be held to have lacked the requisite qualification of ‘ ‘ clergyman or minister of any religion ”.
Universal Life Church, Inc., was incorporated in 1962 in the State of California and has its headquarters in Modesto, California. The exhibits introduced into evidence include a letter from the office of the California Secretary of State that it does not know whether Universal Life Church, Inc., is a “ religious denomination ” within the meaning of section 4205 of the California Civil Code, providing that a marriage may be solemnized by any Judge of a court of record or Justice Court in the State or by any priest, minister or rabbi of any religious denomination, of the age of 21 years or over. The New York Secretary of State has advised plaintiff’s attorneys that he has no record of Universal Life Church, Inc. The evidence in this case is that it has no church or situs within the State of New York.
The following excerpts from a circular entitled “ Information about The Universal Life Church, Inc.”, given with a card enti-. tied “ Credentials of Ministry,” certifying to bearer’s having been ordained by it, indicate the nature of the organization and its ministry.
“ Congratulations on becoming a ULC minister, enclosed is your Credentials of Ministry. Please fill it out. This is your license and ordination paper. One can perform the same serv *103 ices with this license that a minister of any church can perform, i.e., wedding ceremonies, funerals, baptisms, etc.' You, as a ULC minister, may ordain other ministers. Simply send us their name and address and we will register them and send their credentials.
“1. The ULC has no traditional doctrine. It only believes in that which is right. We believe that everyone has a right to his own conviction and a right to express it. We recognize everyone’s belief.
‘ ‘ 2. The Universal Life Church is a legal organization. It is incorporated in California and filed in many other States and will shortly be filed in All States. We will ordain anyone without question of their faith, for life for a free-will offering.
“3. If anyone would like to start a church, we will be happy to furnish them with a charter for a free-will offering of $1.00 per month. The Headquarters of Universal Life Church will keep the records of your church — all you have to do is to report your activities to Headquarters quarterly. When a church is established, they decide on the types of meetings they wish to have. We have no control over the way you conduct your church services. We recognize everyone’s belief. One needs only a Pastor, a Secretary, and a Treasurer to have a legal church.”
It is stated that “ there are now over 1,000,000 ministers ” and that: “Any ULC ordained minister may perform marriage ceremonies — using the ULC marriage certificate ■ — ■ there is no waiting period and county and state licenses are not necessary. Order a marriage certificate today for a free will offering of $3.00 each.”
Applying the statutory definition of ‘ clergyman ” or “ minister ”, it is clear that the person purportedly solemnizing this marriage neither had authority from a “ governing ecclesiastical body of the denomination or order ” nor “ otherwise from the church or synagogue to preside over and direct the spiritual affairs of the church or synagogue.” Universal Life Church, Inc., is not an ecclesiastical body of denomination or order; indeed, it is entirely nonecclesiastical and nondenominational. Thus, in the absence of an actual church or stated meeting place for worship or any form of religious observance, presided over or directed by .a person regarded by such group as its minister, whether or not properly ordained, which would vest in such person the authority to perform the marriage ceremony, the person here in question, whose authority on this record rests solely on his having obtained in the mail the card entitled ‘ Credentials of Ministry ”, must be deemed to be without such authority.